UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHELE BROWN,<br>    Plaintiff,<br>v.<br>ZELTIQ AESTHETICS, INC., et al.,<br>    Defendants. | Case No. 2:22-cv-00972-RFB-NJK<br><br>**ORDER**<br><br>[Docket No. 69] |

Pending before the Court is Defendant Zeltiq Aesthetic Inc.'s motion to compel. Docket No. 69. Plaintiff filed a response. Docket No. 70. Defendant filed a reply. Docket No. 71. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons more fully discussed below, Defendant's motion to compel is **GRANTED** as modified herein.

**I.  INTRODUCTION**

This case arises from a cosmetic medical treatment Plaintiff received from Defendant Orange Twist, LLC. *See* Docket No. 1 at 9-42 (complaint).[1] Plaintiff alleges that she underwent a CoolSculpting procedure in July 2019. *Id.* at 25. CoolSculpting is a Food and Drug Administration cleared medical procedure designed to reduce body fat in targeted areas using a process called Cryoliplysis. Docket Nos. 1 at 13-14; 43 at 6-7. Cryolipolysis "freezes fat cells and programs them to die over the course of several months." Docket No. 1 at 13; *see also* Docket No. 43 at 6. Defendant Zeltiq Aesthetics, Inc. markets and sells the CoolSculpting System to a variety of cosmetic medical facilities. Docket Nos. 1 at 15; 43 at 9. Defendant Zeltiq Aesthetics, Inc. also markets CoolSculpting directly to consumers. *Id.*

---

[1]  References to specific pages number are references to the CM/ECF pagination.

A potential side effect of CoolSculpting is Paradoxical Adipose Hyperplasia ("PAH"), also known as Paradoxical Hyperplasia. Docket Nos. 1 at 17; 43 at 11. PAH causes affected tissue to become enlarged and hardened. Docket Nos. 1 at 18; 43 at 13. Plaintiff alleges that PAH is a permanent condition that develops only as a "result of undergoing Cryolipolysis® via the CoolSculpting device," Docket No. 1 at 17, whereas Defendant submits that the cause of PAH is unknown, Docket No. 43 at 11. Plaintiff alleges that PAH tissue does not respond to normal weight loss and can only be removed surgically. Docket No. 1 at 18. Plaintiff further alleges that, even after being surgically removed, PAH tissue can regrow. *Id.* at 19.

Plaintiff alleges that she received a CoolSculpting treatment targeting her neck from Defendant Orange Twist LLC in July 2019. *Id.* at 25. Plaintiff alleges that, subsequent to receiving the CoolSculpting treatment from Defendant Orange Twist LLC, she began to experience the enlargement and hardening of tissue in the area she had received the CoolSculpting treatment. *Id.* at 26. Plaintiff further alleges that this tissue enlargement and hardening was found to be potentially caused by PAH. *Id.* at 27. Plaintiff alleges that she underwent surgical treatment to remove the enlarged and hardened tissue, and that she may have to undergo additional surgical procedures related to the affected areas. *Id.* at 27-28.

Plaintiff brought the instant suit, alleging various claims sounding in negligence and fraud against Defendants Zeltiq Aesthetics, Inc. and Orange Twist LLC, as well as a claim for Strict Products Liability against Defendant Zeltiq Aesthetics, Inc. *See id.* at 29-41. The instant dispute grows out of Defendant Zeltiq's efforts to obtain signed authorizations from Plaintiff to obtain her medical records. Docket No. 69 at 5-8. After out-of-court discussions, the parties were able to resolve their disputes as to some of the sought authorizations. *Id.* at 7. The remaining authorizations that Defendant now seeks to compel are authorizations to obtain Plaintiff's records from Dr. Andres Resto, Sierra Health & Life Services,[2] and Walgreens Pharmacy. *Id.* at 3, 7.

---

[2] Sierra Health & Life Services is Plaintiff's health insurance provider. *See* Docket Nos. 69 at 13; 70 at 12-13.

## II. STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). Relevance during discovery is broader than relevance at trial. *E.g., F.T.C. v. AMG Services, Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013). "The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *V5 Tech. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019). Meeting that burden requires the objecting party to explain "how each of its objections is applicable, by providing the relevant standard for each objection and a meaningfully developed argument as to how the standard has been met." *Hinostroza v. Denny's Inc.*, 2018 WL 3212014, *1 (D. Nev. June 29, 2018) (citing *Green v. Bacca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005)). "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

## III. DISCUSSION

Defendant submits that, because Plaintiff has put her physical, mental, and emotional health at issue in this case, all the sought authorizations are for records that are relevant to the case Docket No. 69 at 10. Defendant submits that these authorizations are relevant because the records it is seeking to obtain may contain information pertaining to the condition underlying this case, other potential causes for Plaintiff's condition, or treatments Plaintiff has received for the underlying condition. *Id.* at 12, 14, 16. Defendant further submits that, because it is only attempting to obtain signed authorizations from Plaintiff, any burden on her is minimal. *Id.* at 10. Plaintiff submits that the sought records are not proportional or relevant to the needs of the case. Docket No. 70 at 8.

If a plaintiff puts her physical health at issue, then her medical treatment notes are discoverable. *E.g.*, *Hinostroza*, 2020 WL 3212014, at *3; *Rosales v. Crawford & Co.*, 2021 WL 4429468, at *4 (E.D. Cal. Sep. 27, 2021) (citing *Gonzalez v. Marks*, 2009 WL 179779, at *3 (E.D. Cal. Jan. 26, 2009)). The discoverability of medical records is based around the idea that a defendant has the right to determine whether a plaintiff has any pre-existing conditions or other aggravating factors that could affect the complained-of injury or illness. *Adele v. Dunn*, 2012 WL

3

5420256, at *2 (D. Nev. Nov. 5, 2022); *Martin v. Collier*, 2012 WL 28837, at *2 (D. Nev. Jan. 4, 2012) ("Certainly in the interest of justice the defendant in an action for personal injuries and loss of income has the right to determine whether the injuries or conditions complained of result from any other injury or illness which the patient-plaintiff has suffered") (quoting *Rose v. Vt. Mut. Ins. Co.*, 2007 WL 3333394, at *1 (D. Vt. Nov. 8, 2007). Although this basis allows for broad discovery into a personal injury plaintiff's treatment records, such discovery is not without limits. Plaintiff submits that medical records older than five years are disproportionate to the needs of the case. Docket No. 70 at 13-14. She cites to *Alcantara v. Bodega Latina Corp.*, 2020 WL 1692957, at *1, (D. Nev. Apr. 7, 2020), to support this submission. Docket No. 70 at 13-14. *Alcantara* involved a slip-and-fall and the records at issue were incident reports from prior slip-and-falls in the defendant's stores. 2020 WL 1692957, at *1-*2. Incident reports from similar but otherwise unrelated accidents are different from a plaintiff's medical records in a case where the plaintiff has put her medical condition at issue. In the latter context, Ninth Circuit courts have held a plaintiff's treatment records are considered proportional if they are less than ten years old. *Hinostroza*, 2018 WL 3212014, at *3 (collecting cases) ("As to the relevant time period, Courts within the Ninth Circuit have found that medical records and reports dating between three years to ten years prior to an alleged accident are discoverable").

Plaintiff has put her physical health directly at issue in this case. The treatment records Defendant now seeks to compel are relevant and proportional because they relate directly to Plaintiff's physical, mental, or emotional health. Plaintiff must, therefore, provide to Defendant signed authorizations to access her records from Dr. Andres Resto, Sierra Health & Life Services, and Walgreens Pharmacy.[3]

Plaintiff submits that Dr. Resto retired in 2015 and no longer retains his records from practice. Docket No. 70 at 7, 10-11. Defendant has the right to verify Plaintiff's claims on its

---

[3] Plaintiff seemingly seeks to avoid providing authorizations for these records by submitting that she has requested the records and will disclose any relevant portions to Defendant. Docket No. 70 at 7-8, 12-13. However, "neither Defendant nor the Court is required to take Plaintiff's word, without further support, as true." *Hinostroza*, 2018 WL 3212014, at *3 (quoting *Potter v. W. Side Transp., Inc.*, 188 F.R.D. 362, 364 (D. Nev. 1999)). Defendant is, therefore, entitled to review Plaintiff's records itself.

own. However, that right exists within the Federal Rule of Civil Procedure 1's requirement that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Defendant can gain nothing from conducting its own review of records that do not exist. In light of Rule 1's directive, if Plaintiff has already received a certificate of non-existence from Dr. Resto, she may produce that in place of a signed authorization.

A. <u>Plaintiff's Objections to Producing Dr. Resto's Records</u>

The cases Plaintiff cites to support avoiding producing Dr. Resto's records are unpersuasive. Plaintiff cites *United States EEOC v. Graycor Indus. Constructors, Inc.*, 2005 U.S. Dist. LEXIS 59948, at *4 (D. Nev. Oct. 6, 2005), for the proposition that "the scope of discovery in civil actions is limited to the related injury complained of or any pre-existing injury relating thereto." Docket No. 70 at 9 (emphasis omitted). A review of *Graycor* shows that it does not stand for such a limiting proposition.

In *Graycor*, a defendant being sued for civil rights sexual harassment moved to compel the production of the suing employee's medical treatment and mental health treatment records. 2005 U.S. Dist. LEXIS 59948, at *1-*3. The *Graycor* employee was seeking emotional distress damages. *Id.* at *3. The employee had not, however, alleged an independent claim of emotional distress, nor did she intend to introduce medical records or medical expert testimony at trial to support her damages contentions. *Id.* at *3-*4. One of the primary issues in *Graycor* was when are medical records, *i.e.,* physical health records, discoverable in a case involving solely mental health and emotional distress claims.[4] *See id.* at *4, *6-*7. Defendant now seeks Plaintiff's medical records to evaluate not only her mental and emotional health claims but also her physical health claims. The distinction *Graycor* focused on, and from where Plaintiff seemingly derived her limiting proposition, is inapplicable to this case.

---

[4]   The other issue discussed in *Graycor* is when is "psychotherapist-patient privilege" waived, which is not applicable to the present case. *See* 2005 U.S. Dist. LEXIS 59948, at *4-*5, *7-*8.

Further, *Graycor* focused its analysis on mental health or emotional distress claims brought in a Title VII or civil rights action context, and not physical health claims or claims for physical damages sounding in negligence. *See id.* at *4 ("To the extent that a claimant's medical records relate to the claimant's mental health or emotional distress, however, they may be relevant and discoverable even as to a 'garden variety' emotional distress claim under Title VII"), *6 ("Based on the above authorities, the general parameters of discovery of medical records in a Title VII or civil rights action involving a claim for emotional distress damages are relatively clear"). The plaintiff's/employee's claims in *Graycor* were, at bottom, related to the employee's mental and emotional health. Thus, the *Graycor* court noted that records of a medical exam would not be discoverable absent a showing that the records related to the employee's mental health. *Id.* at *4, *7. However, the court went on to state that medical records would be discoverable if they indicated an alternative cause of the emotional distress or indicated physical symptoms of the emotional distress. *Id.* Consequently, the *Graycor* court ordered the plaintiff's counsel to obtain the employee's medical records and turn over any relevant records to the defendant.[5][6] *Id.* at *8-*9. Here, however, Plaintiff has placed her physical health directly at issue. Therefore, the medical records in this case may indicate an aggravating factor or alternative cause for Plaintiff's alleged harm, making the records relevant and proportional to the needs of the case.

Plaintiff next quotes *Martin v. Collier*, 2012 WL 28837, at *2 (D. Nev. Jan. 4, 2012), for the proposition that "a plaintiff does not automatically open his or her entire medical history to 'carte blanche' discovery by alleging a claim for personal injury damages." Docket No. 70 at 9-10. *Martin*, in turn, derived that principle from the Nevada Supreme Court case *Schlatter v. Eigth*

---

[5] The *Graycor* court did allow the plaintiff to obtain and review the suing employee's medical records and then produce whatever records it thought were relevant to the case. 2005 U.S. Dist. LEXIS 59948, at *8-*9. Noteworthy is that this allowance was premised on the parties' agreement to proceed in that way. *Id.* Moreover, the *Graycor* court explicitly stated that if the defendant thought the plaintiff was unjustifiably withholding relevant records, then the defendant could file a motion to compel. *Id.* Such a process does not contradict the general proposition that the producing party does not get to act as the gatekeeper of relevancy.

[6] Although the *Graycor* defendant attempted to compel the plaintiff's mental health treatment records, the court declined to compel the plaintiff to produce her mental health records based on unresolved privilege issues. *See* 2005 U.S. Dist. LEXIS 59948, at *7-*9.

6

*Judicial District Court in & for Clark Cnty.*, 561 P.2d 1342, 1343-44 (Nev. 1977). *Martin*, 2012 WL 28837, at *2. *Schlatter* involved a challenge to a state trial court order allowing discovery into a personal injury plaintiff's treatment record for the underlying injury and, if a pre-existing condition was discovered, discovery into the plaintiff's entire medical history without limitation. *See Schlatter*, 561 P.2d at 1343. The *Schlatter* court noted that Nevada's "discovery rules provide no basis for such an invasion into a litigant's private affairs merely because redress is sought for personal injury." *Id.* at 1344. Instead, discovery must go to a case's underlying issues or lead to the discovery of other admissible evidence. *Id.*

The *Schlatter* court ultimately left to the trial court the determination of what records were properly discoverable. *Id.* The *Martin* court however, determined what records were properly discoverable. *Martin*, 2012 WL 28837, at *2. Because the *Martin* plaintiff had put his medical condition at issue, he was ordered to produce his medical records to the defendant. *Id.* at *2, *4. In the instant case, as in *Martin*, Plaintiff has put her medical condition at issue. Unlike in *Schlatter*, Defendant is not seeking access to Plaintiff's medical records without limit. Instead, subject to the modifications herein, all the records Defendant now seeks fall within the well-established limits for discoverable medical records in cases involving personal injuries. *See Hinostroza*, 2018 WL 3212014, at *3. This is not, therefore, the type of "carte blanche" discovery that would be avoidable.

Plaintiff further quotes *Bank of Am., N.A. v. Azure Manor/Rancho de Paz Homeowners Ass'n*, 2018 U.S. Dist. Lexis 44095, at *4 (D. Nev. Mar. 19, 2018), for the proposition that "the speculative hope that discovery may be helpful in formulating a currently-unavailable defense is simply not sufficient to justify that discovery." Docket No. 70 at 11. The underlying dispute in *Azure Manor* was "whether [a] foreclosure sale ha[s] the legal effect of extinguishing a senior deed of trust on the property securing a promissory note for the purchase of the property." 2018 U.S. Dist. LEXIS 44095, at *4. Not at issue was whether the creation of either parties' interest was defective. Nevertheless, the defendant in *Azure Manor* moved to compel deposition testimony "regarding creation, execution and recording of the assignments of the" plaintiff's interest in the subject property. *Id.* at *3. The defendant argued that the sought testimony was relevant because,

7

although the creation of the plaintiff's interest was not at the time at issue in the issue, the deposition testimony could cause the creation of the plaintiff's interest to be at issue. *See id.* at *10.

Here, unlike in *Azure Manor*, Defendant is not casting about to create new issues. Rather, Plaintiff herself put her physical health directly at issue. Defendant is, therefore, entitled to obtain discovery that would inform it on that issue. Plaintiff submits that Dr. Resto's records can have no bearing on her alleged injuries. Docket No. 70 at 11. Defendant notes, however, that Plaintiff implicated her cancer treatment in her complaint. Docket No. 69 at 11 n.6 (citing Docket No. 1 at 28 ¶156). Further, although Plaintiff disputes this, Dr. Resto apparently referred Plaintiff to "Dr. Cameron Earl, one of the providers Plaintiff consulted regarding her alleged submental enlargement." Docket No. 69 at 12. *But see* Docket No. 70 at 10-11 (characterizing that annotation in Dr. Earl's notes that Dr. Resto was Plaintiff's referring physician as a clerical error). Moreover, the causes and aggravating factors of PAH are currently unknown. Docket No. 43 at 11-13. Given these unknowns, discovery should be relatively broad. *Cf. Martin*, 2012 WL 28837, at *3 ("Because the causes of allegedly impaired mental functioning can be multiple, the scope of discovery should therefore also be relatively broad"). Considering these facts collectively, Defendant's request for Dr. Resto's records is not an impermissible fishing expedition.

Plaintiff next cites *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004), and *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998), for the proposition that her constitutional privacy interest in her medical records protects her from having to produce the records. Docket No. 70 at 11-12. Both cases are inapposite. *Tucson Woman's Clinic* involved a challenge by licensed physicians to a state regulatory scheme for facilities that perform a minimum number of abortions per month. 379 F.3d at 536-37. To support her privacy interest submission, Plaintiff cites the case's discussion of the regulatory scheme's requirement that clinics provide government inspectors unredacted access to patient medical records, provide patient ultrasound scans containing patient identifying information to private entities contracted by the state to review the scans, and provide patient identifying information to the state regulatory board after an abortion related "incident." *Id.* at 551-54. The analysis was limited to when state

8

access to sensitive third-party medical information intrudes on that third-party's right to informational privacy. *See id.* *Norman-Bloodsaw* involved employees of a state-owned and operated research laboratory that received federal funding alleging that, as a part of their preemployment health screening where they gave blood and urine samples, they were tested for "intimate medical conditions" without their knowledge or consent. 135 F.3d at 1264-65. Just as with *Tucson Woman's Clinic*, the portion of *Norman-Bloodsaw* that Plaintiff cites examines solely when government action, taken outside of the litigation context, intrudes on an individual's privacy interest. *See id.* at 1268-71. In short, both cases involved challenges to government actors obtaining medical information from private individuals without a warrant and outside of any litigation. They do not speak to whether a personal injury plaintiff in an active litigation can refuse to turn over her medical records during discovery.

The Court does not deny that Plaintiff has an interest in keeping her medical records private. However, when a privacy interest is implicated by otherwise relevant and proportional discovery, the proper remedy is production of the discovery subject to a protective order, and not a general avoidance of production. *See, e.g.*, *Alcantara*, 2020 WL 1692957, at *3 ("the Court already found that the parties should produce the incident reports under a protective order, which protects the confidential nature of the incident reports"); *Rosales*, 2021 WL 4429468, at *5 (noting that entry of stipulated protective "alleviates any privacy concern plaintiff may have" in producing her medical records); *Hukman v. Southwest Airlines Co.*, 2019 WL 566451, at *4 n.3 (S.D. Cal. Feb. 12, 2019).

B.  Plaintiff's Objections to Sierra Health & Life Services, and Walgreens Pharmacy Records

Many of Plaintiff's objections to having to produce the Sierra Health & Life Services and Walgreens Pharmacy records are the same as her objections to having to produce Dr. Resto's records. *Compare* Docket No. 70 at 8-12 *with*, *id.* at 12-15. For the same reasons discussed above, the Court finds these objections unpersuasive.

Plaintiff submits that, because these records are from her health insurance company and pharmacists, they are irrelevant and disproportional to the needs of the case. *Id.* at 12-13. However, because health insurance and pharmacy records may contain information as to other

causes or aggravating factors of Plaintiff's alleged injury, such records are routinely found to be discoverable. *Hinostroza*, 2018 WL 3212014, at *3; *Turnbull v. Burke*, 2010 WL 11629640, at *2 (D. Nev. Mar. 9, 2010); *Sabo v. Fiskars Brands, Inc.*, 2013 WL 6816683, at *3 (D. Idaho Dec. 20, 2013) (compelling responding party to sign an authorization for his pharmacy records).

Plaintiff objects to Defendant's initial request for her health insurance records as being precluded by the collateral source doctrine. Docket No. 69 at 13. Plaintiff cites *Proctor v. Castelletti*, 112 Nev. 88, 911 P.2d 853 (1996), to support this submission. *Proctor* announced a rule that collateral source evidence is *per se* inadmissible in evidence because it will always be unduly prejudicial relative to its probative value. *See id*. at 854. *Proctor* is *per se* inapplicable to this discovery dispute. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable"). Further, the collateral source doctrine is inapplicable when a party is seeking insurance records to develop an alternative cause defense, and not looking for information regarding insurance payouts. *See In re Air Crash Near Clarence Center, New York, on Feb. 12, 2009*, 2011 WL 6370189, at *7 (W.D.N.Y. Dec. 20, 2011).

Although the Court finds Plaintiff's constitutional right to privacy submission unpersuasive, it is cognizant of the sensitive nature of Plaintiff's health insurance and pharmacy records. These records are relevant to Plaintiff's claims and Defendant's defenses; however, the Court finds that ten years of records is disproportionate to the needs of the case. Accordingly, Plaintiff need only provide Defendant an authorization to access her health insurance and pharmacy records dating back to seven years prior to the underlying CoolSculpting treatment.

### IV. CONCLUSION

For the reasons more fully discussed above, Defendant's motion to compel is **GRANTED** as modified herein. Plaintiff is **ORDERED** to produce a signed records authorization for Defendant to obtain her records from Dr. Andres Resto. If Dr. Resto has provided Plaintiff with a certificate of nonexistence, she may produce that to Defendant in place of the signed records authorization. Plaintiff is further **ORDERED** to produce signed records authorizations for Defendant to access her Sierra Health & Life Services and Walgreens Pharmacy records dating

back to seven years prior to the underlying CoolSculpting treatment only. All signed authorizations must be produced to Defendant no later than July 28, 2023.

IT IS SO ORDERED.

Dated: July 19, 2023

_____
Nancy J. Koppe
United States Magistrate Judge